J. S61014/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
   :        PENNSYLVANIA
v.    :
   :
DEVINE A. CAMPBELL,    :    No. 58 WDA 2014
   :
       Appellant    :

Appeal from the Judgment of Sentence, December 4, 2013,
in the Court of Common Pleas of Mercer County
Criminal Division at No. CP-43-CR-0000121-2012

BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED APRIL 27, 2015**

On November 21, 2013, following a jury trial, appellant was convicted of one count of murder in the second degree, 18 Pa.C.S.A. § 2502(b); two counts of robbery, 18 Pa.C.S.A. § 3701(a)(1)(i) and (ii), and two counts of criminal conspiracy to commit robbery, 18 Pa.C.S.A § 903(a)(1).  Herein, appellant appeals from the judgment of sentence entered on December 4, 2013, in the Court of Common Pleas of Mercer County.  We affirm.

The facts of this case are as follows.  On December 30, 2011, William Basilone ("the victim") was shot and killed outside of Basilone's Bar and Restaurant, the establishment he owned.  The security cameras[1] outside

---

* Retired Senior Judge assigned to the Superior Court.

[1] The bar had video surveillance cameras mounted outside and inside the bar.

the bar did not capture the shooting, but did capture the images of three individuals walking up and down Roemer Boulevard at approximately 10:30 p.m. One of the men was wearing a gray hooded sweatshirt with a Champion logo; he was identified as co-defendant Joshua Stewart ("Stewart"). (Notes of testimony, 11/12-21/13 at 368, 375.) The second man was appellant,[2] wearing a plain, dark, hooded sweatshirt and faded jeans, while the third individual was wearing a camouflage jacket and was later identified as Tyler Kalenic ("Kalenic"). (*Id.* at 369, 373, 375.)

Kalenic explained that earlier that evening, he was with appellant and Stewart who asked him if he wanted to rob someone with them. (*Id.* at 371.) The men went to Basilone's, and Kalenic entered the bar by himself and approached the cash register. Kalenic testified that he placed a fake order for a pizza to "[check] the place out" and see how many people were present. (*Id.* at 378.) The video surveillance depicted Tyree Sanders ("Sanders") walking east on Roemer Boulevard where he saw and greeted Kalenic, Stewart, and appellant. As Sanders walked away, the men walked back to the parking lot of the bar. At this point, Kalenic left and went home.

Later that evening, the camera depicted Stewart enter the bar, approach the register, and leave. Still later in the evening, the cameras depicted two individuals, Stewart, who was wearing a gray hoodie and appellant, wearing a dark hoodie, crossing the street and approaching the

---

[2] Appellant was 17 years of age.

bar; both men were wearing masks. Stewart had both hands in the front pocket of his hoodie. Appellant pulled on the handle of the door to the bar and was unable to open it; the men then walked out of camera range. (*Id.* at 392.) After this failed attempt to enter, the men went to the alley behind the building and removed their masks. (*Id.* at 393-394.)

Testimony was presented that appellant argued with Stewart, telling Stewart that the door was locked and there was no need to go on with the robbery. During the argument, the victim came around the corner. Stewart, who was unmasked, pulled a gun and fired at the victim, striking him several times. Appellant immediately fled the scene. The victim was pronounced dead at the hospital. Three eyewitnesses testified as to what they heard and saw from three different vantage points. Stewart and appellant ran to Kalenic's house and went into the basement. (*Id.* at 400-401.) All three men later got into Ciera Vincent's ("Ciera") car; Ciera's sister Olivia was also present. Ciera drove Kalenic to a friend's house and drove appellant and Stewart to Stewart's house. (*Id.* at 403.)

Appellant was charged with the aforementioned crimes; J. Jarrett K. Whalen, Esq. ("Attorney Whalen"), was appointed to represent appellant. Attorney Whalen had also been appointed to represent appellant in other pending criminal cases. On August 22, 2012, counsel filed a motion to withdraw. In the motion, counsel explained that while incarcerated, appellant and Louis Y. Brewer ("Brewer") allegedly robbed another inmate.

Attorney Whalen had been appointed to represent Brewer in two unrelated cases. Following a hearing on August 31, 2012, the trial court denied the motion to withdraw. (Docket #25.)

On February 5, 2013, appellant's counsel filed another motion to withdraw as counsel. (Docket #35.) Counsel averred that he received discovery indicating that Cedric Boyd ("Boyd"), who would be a material witness in appellant's case, would testify that appellant and Stewart made incriminating oral statements and provided Boyd with incriminating written documents while incarcerated in the Mercer County Jail. Appellant's counsel had previously represented Boyd and received privileged and confidential information relative to Boyd. The trial court denied counsel's motion to withdraw and issued a protective order stating that counsel could not participate at trial in cross-examining Boyd if he were called as a Commonwealth witness. (Docket #43.) Nor could counsel disclose any information he received from Boyd.

On May 13, 2013, appellant filed a motion *in limine* seeking to exclude approximately 55 photographs of the deceased victim; approximately 4 of the photographs were taken when the victim was in the emergency room and the other 51 were taken during the course of the autopsy and x-rays. (Docket #54.) The following day, the trial court granted appellant's motion in part and denied it in part. (Docket #57.) The motion was granted to the extent the Commonwealth consented to withdraw

any photographs of the victim taken in the emergency room or at the hospital. The motion was denied with respect to the autopsy photographs and x-rays.

Appellant filed another motion **in limine** on November 1, 2013, seeking to exclude evidence pertaining to Olivia and Ciera Vincent's subsequent pregnancies, allegedly by appellant's and Stewart's brothers. (Docket #76.) The motion also sought to exclude appellant's prior criminal record, Facebook photographs, and threats made toward Boyd and his family. On November 15, 2013, the trial court issued an order finding appellant's prior criminal record would be admissible as **crimen falsi** in the event that appellant testifies at trial. (Docket #87.) The order also stated that any testimony by Olivia and Ciera Vincent regarding having children to appellant's or Stewart's brothers is admissible on the grounds of credibility given their connection by blood to one or both men. (**Id.**) Further, the court ordered that any testimony by Boyd that appellant told him in writing or orally about appellant's plan to have his brother or Stewart's brother impregnate one or both of the sisters was admissible for the sole purpose of establishing the credibility of Boyd as a jailhouse snitch. (**Id.**) The order directed that the Commonwealth shall not elicit information relative to any threats allegedly made toward Boyd and his family, unless the door was opened by defense counsel on cross-examination. The argument that Facebook and cell phone photographs of either appellant or Stewart should

not be admitted without establishing the Facebook account or other account information from the digital providers was denied. (*Id.*) On November 7, 2013, appellant filed a motion for a continuance and related relief, including a motion for change of venire and/or venue.

A jury was impaneled on November 18, 2013, and trial commenced. Appellant testified and averred that he never agreed to rob William Basilone or any other individual. Rather, he had only agreed to rob the bar with Stewart. When appellant attempted to open the door to the bar but discovered it was locked, appellant went to the alley and removed his mask because the robbery attempt was over. Appellant testified that he argued with Stewart that there was no need to go on with the robbery, and during the course of the argument, Basilone came around the corner. Stewart pulled out the gun and fired at Basilone.

On November 21, 2013, appellant filed two motions for judgment of acquittal. The motions were denied, and appellant was convicted of one count of murder in the second degree, two counts of robbery, and two counts of criminal conspiracy to commit robbery. On December 4, 2013, appellant was sentenced to serve a term of imprisonment of not less than 35 years to life for the second-degree murder conviction. For the crimes of robbery and conspiracy to commit robbery, appellant received aggregate consecutive sentences of 156 months to 40 years' imprisonment, which were concurrent with the sentence imposed for second-degree murder. Appellant

filed a post-sentence motion, which was denied. Appellant filed a timely notice of appeal.

The following issues have been presented for our review:

I.    WHETHER THE TRIAL COURT ERRED WHEN THE TRIAL COURT DENIED APPELLANT'S COUNSEL'S MOTION TO WITHDRAW BASED UPON APPELLANT'S COUNSEL'S PREVIOUS REPRESENTATION OF LOUIS YONTE BREWER?

II.   WHETHER THE TRIAL COURT ERRED WHEN THE TRIAL COURT DENIED APPELLANT'S COUNSEL'S MOTION TO WITHDRAW BASED UPON APPELLANT'S COUNSEL'S PREVIOUS REPRESENTATION OF CEDRICK BOYD, A COMMONWEALTH WITNESS, AND FURTHER PROHIBITING APPELLANT'S COUNSEL FROM HAVING ANY INVOLVEMENT IN THE INVESTIGATION, PREPARATION, AND/OR CROSS EXAMINATION OF MR. BOYD, OR ANY DEFENSE WITNESS WHO WOULD POTENTIALLY REBUT ANY TESTIMONY PRESENTED BY BOYD, WHICH PREVENTED APPELLANT'S COUNSEL FROM EFFECTIVELY REPRESENTING APPELLANT?

III.  WHETHER THE TRIAL COURT ERRED WHEN THE TRIAL COURT DENIED APPELLANT'S MOTION FOR SUPPRESSION RELATIVE TO STATEMENTS AND WRITTEN MATERIAL BETWEEN APPELLANT AND BOYD?

IV.   WHETHER THE TRIAL COURT ERRED WHEN THE TRIAL COURT DENIED APPELLANT'S MOTION IN LIMINE REQUESTING EXCLUSION OF AUTOPSY PHOTOGRAPHS AND X-RAYS OF THE VICTIM?

V.    WHETHER THE TRIAL COURT ERRED WHEN THE TRIAL COURT DENIED APPELLANT'S MOTION FOR CONTINUANCE AND RELATED RELIEF, BASED UPON THE DISCOVERY OF

NEW POTENTIAL DEFENSE WITNESSES COMING FORWARD, THE COURT APPOINTED PRIVATE INVESTIGATOR NOT COMPLETING TASKS ASSIGNED TO HIM, THE NEED TO FIND AN UNTAINTED JURY POOL, AND THE POTENTIAL FOR A JURY VIEWING OF THE CRIME SCENE AT THE SAME TIME OF THE YEAR AS THE ALLEGED CRIME?

VI.    WHETHER THE TRIAL COURT ERRED WHEN THE TRIAL COURT DENIED IN PART APPELLANT'S MOTION IN LIMINE RELATIVE TO AN ALLEGED CONSPIRACY TO IMPREGNATE THE VINCENT SISTERS, COMMONWEALTH WITNESSES, AND PHOTOGRAPHS OBTAINED OF CO-DEFENDANT JOSHUA STEWART AND APPELLANT VIA JOSHUA STEWART'S FACEBOOK PAGE?

VII.    WHETHER THE TRIAL COURT ERRED WHEN THE TRIAL COURT ASSISTED THE APPELLEE IN ADVISING HOW TO EXAMINE APPELLEE WITNESS TYREE SANDERS?

VIII.    WHETHER THE TRIAL COURT ERRED WHEN THE TRIAL COURT DENIED APPELLANT'S MOTION FOR JUDGMENT OF ACQUITAAL[sic] UPON COMPLETION OF THE APPELLEE'S CASE AND APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL UPON CONCLUSION OF ALL EVIDENCE?

IX.    WAS THE SENTENCE OF THE COURT MANIFESTLY EXCESSIVE IN LENGTH BECAUSE THE TRIAL COURT'S SENTENCE EXCEEDED THE MANDATORY MINIMUM, FAILED TO ADEQUATELY CONSIDER APPELLANT'S AGE, THE REHABILITATIVE ASPECT OF SENTENCING AND THAT APPELLANT WAS NOT THE ALLEGED GUNMAN?

Appellant's brief at 4-6.

The first issue presented concerns whether the trial court erred in denying defense counsel's motion to withdraw based on his claim of conflict of interest due to his representation of appellant and Brewer in unrelated cases. We find no error with either the trial court's decision or rationale. After a thorough review of the record, the briefs of the parties, the applicable law, and the opinion of the trial court, it is our determination that there is no merit to the question raised on appeal. Accordingly, we affirm this issue on the basis provided by the Honorable Christopher J. St. John's October 16, 2012 Memorandum Opinion and Order and adopt it as our own. (Docket #25.)

Next, appellant argues that the trial court erred in denying his second motion to withdraw, which cited a conflict of interest as the result of Attorney Whalen's prior representation of Boyd. Following our review, we find no merit to this claim. As Judge St. John's opinion, filed on March 4, 2013, correctly disposes of the issue presented, we will affirm based on the opinion. (Docket #43.)

The third claim presented for our review concerns whether the trial court properly denied appellant's motion to suppress information obtained by Boyd. He contends that the Commonwealth's use of this evidence violated his right to counsel guaranteed under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Appellant essentially argues that Boyd acted outside the scope of a

permissible government listening post in obtaining statements and writings from appellant and Stewart. (Appellant's brief at 26.)

The Commonwealth cannot circumvent a defendant's Sixth Amendment right to counsel by sending in an informant to question a defendant in circumstances where police could not do so themselves without the presence of an attorney for the defendant. *Commonwealth v. Franciscus*, 710 A.2d 1112 (Pa. 1998). However, where a prisoner volunteers his complicity in criminal activity to a fellow inmate, he does so at his own peril. Indeed,

> "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached" . . . . [A] defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police.

*Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986), quoting *U.S. v. Henry*, 447 U.S. 264, 277 (1980). A voluntary jailhouse admission to a fellow inmate is not subject to any more protection than a confession made by the defendant outside of his jail cell to another person willing to notify authorities. *Commonwealth v. Ogrod*, 839 A.2d 294, 329 (Pa. 2003). "Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Id.* In other words, "individual acts do not become imbued with the character of governmental action merely because

they are later relied upon and used by the government in furtherance of governmental objectives." ***Commonwealth v. Hawkins***, 701 A.2d 492, 505 (Pa. 1997).

The Pennsylvania Supreme Court has found no Sixth Amendment violation where the defendant "fails to supply any specific evidence" of a "conspiracy" between the police and the informant. ***Ogrod***, 839 A.2d at 329. A defendant cannot establish a violation where he does not cite "evidence that the Commonwealth arranged for the witness to be placed near [the defendant] to question him." ***Id.***; ***see Hawkins***, 701 A.2d at 505 (no Sixth Amendment violation where "the record demonstrates that the two informants acted on their own initiative without the benefit of any promise or reward by the Commonwealth"). Likewise, there can be no violation where "the authorities never solicited [the informant] to obtain information concerning the [crime for which the defendant was suspected]." ***Commonwealth v. Lopez***, 739 A.2d 485, 500 (Pa. 1999); ***see id.*** at 501 n.20, contrasting ***Franciscus***, ***supra***, because there,

> the police agreed to testify on behalf of the jailhouse informant concerning his continuing efforts on their behalf, and because the police actively assisted the informant in his efforts to obtain incriminating statements from his fellow inmates, the jailhouse informant had been acting as an agent of the government when he obtained incriminating statements from Franciscus.

The trial court made the following findings of fact concerning this issue.

2. While in the Mercer County Jail in early 2012, Mr. Boyd shared a cell for about two months with Defendant Stewart and received various information verbally from him with regard to his pending homicide and robbery cases and alleged plots pertaining to his homicide case.

3. Prior to August of 2012, [Boyd] also had conversations with [appellant] at the Mercer County Jail and/or reviewed correspondence in the nature of notes and other writings that he was either a direct participant in or was a courier, and later contacted the Mercer County District Attorney's Office through his then attorney, Stanley Booker.

. . . .

5. Upon receiving a letter from Attorney Booker confirming Mr. Boyd's desire to cooperate with the Commonwealth, and that there was no plea bargain in Mr. Boyd's cases to induce his cooperation, Mr. Boyd met with Detectives Grolemund and Piatek in the Mercer County Courthouse and gave a tape-recorded interview as to the information he obtained from the Defendants, and at the time of those interviews, Mr. Boyd did not have the written correspondence that he promised to later deliver to the Commonwealth.

6. On August 13, 2012, Detective Grolemund advised Mr. Boyd that he was now a government agent and that he should not initiate any questioning or conversations with either defendant.

7. After August 13, 2012, Mr. Boyd did not initiate and/or question either defendant, even though he continued to meet with Detective Grolemund and Detective Piatek to deliver various pieces of written correspondence and to give further details pertaining to that communication.

. . . .

9.  Mr. Boyd was not offered any plea bargains in any of his cases but the Commonwealth promised to advise the Court in his criminal cases, at the appropriate time, of Boyd's cooperation and Mr. Boyd requested protection while incarcerated and asked the Commonwealth for assistance for his family to travel to SCI Albion to meet him.

. . . .

11. The Commonwealth did not request Mr. Boyd, after August 9, 2012, to affirmatively seek out either defendant and acquire additional information and/or work as a government agent.

12. It was at the insistence of Boyd and/or his Attorney Booker that the meetings that occurred with the Commonwealth and Mr. Boyd occur.

Findings of fact, 4/4/13 at 2-5.

The evidence demonstrated that Boyd was not acting as a government informant when appellant voluntarily confessed to him. Appellant failed to cite or produce any evidence that the police sent Boyd to question defendant, promised Boyd anything to obtain information from defendant, intentionally placed Boyd near appellant to further their investigation, or actively assist. Rather, once Boyd spoke with the detectives and was informed that he was not to initiate any questions or conversations with appellant, he followed those instructions and merely acted as a listening post. After Boyd met with the detectives upon the direction of his attorney,

the detectives promised him no consideration but did offer to advise the court in his criminal cases that he had been cooperative. Thus, the trial court properly denied appellant's motion.

The fourth issue is whether the trial court erred when it denied appellant's motion *in limine* concerning autopsy photographs and x-rays of the victim. (Appellant's brief at 27.)

Our standard of review is as follows:

> Admission of evidence . . . rests within the sound discretion of the trial court, which must balance evidentiary value against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury. We reaffirm our confidence in our trial judges to oversee the presentation of evidence so that overtly passionate, intentionally biased and inflammatory material is kept out of the courtroom. We will reverse a trial court's decision as to admissibility of evidence only if [Appellant] sustains the heavy burden to show that the trial court has abused its discretion.

*Commonwealth v. Bryant*, 67 A.3d 716, 726 (Pa. 2013) (citations and internal quotation marks omitted).

When considering the admissibility of photographs of a homicide victim, which by their very nature can be unpleasant, disturbing, and even brutal, the trial court must engage in a two-step analysis:

> First a [trial] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary

> value that their need clearly outweighs the likelihood
> of inflaming the minds and passions of the jurors.

***Commonwealth v. Tharp***, 30 A.2d 519, 531 (Pa. 2003) (citation omitted).

Appellant claims that the photographs should not have been admitted as the cause of death was stipulated prior to trial as was the admissibility of the coroner's report. (Appellant's brief at 27.) This argument, however, ignores the rule stated in ***Commonwealth v. Stanley***, 446 A.2d 583, 588 (Pa. 1982), that the Commonwealth may prove its case with any proper evidence, "and does not have to accept the accused's stipulations" (emphasis omitted).

Appellant also argues that the very nature of the photographs could have diverted the jury's attention from its duty to impartially weigh the evidence.[3] (Appellant's brief at 28.) The photographs depict the victim on the autopsy table and the bullet wounds. Appellant argues that he was not the gunman and was "only charged with felony murder," so the photographs had no evidentiary purpose. (***Id.***) We find no error on the part of the trial court and affirm on the rationale provided in the April 29, 2014 opinion. (Trial court opinion, 4/29/14 at 10-12.)

The fifth issue presented is whether the trial court erred in denying appellant's motion seeking a continuance. (Appellant's brief at 29.) The decision of whether to grant or deny a request for a continuance is within

---

[3] We note appellant has abandoned that portion of his argument which concerned the x-rays.

the sound discretion of the trial judge. ***Commonwealth v. Chambers***, 685 A.2d 96, 104 (Pa. 1996). The refusal to grant a continuance constitutes reversible error only if "prejudice or a palpable and manifest abuse of discretion is demonstrated." ***Commonwealth v. Griffin***, 804 A.2d 1, 12 (Pa.Super. 2002). Following our review, we find that Judge St. John's opinion, filed on April 29, 2014, correctly disposes of the issue presented, and accordingly, we affirm based on the opinion. (Trial court opinion, 4/29/14 at 12-15.)

The argument presented in support of appellant's sixth issue concerns the admissibility of photographs of appellant and Stewart from Stewart's Facebook page. Appellant argues that the trial court erred in admitting these photographs. Specifically, appellant contends that digital photographs are so susceptible to alteration that either an individual present at the time the photograph was taken must testify to the accuracy of the image or an expert must testify that no one has tampered with the photograph. (Appellant's brief at 33.)

Again, questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the trial court's decision absent a clear abuse of discretion. ***Bryant***, ***supra***. Demonstrative evidence must also be properly authenticated by evidence sufficient to show that it is a fair and accurate representation of what it is purported to depict. Pa.R.E. 901(a). To authenticate photographs, motion pictures, and video

recordings, Pennsylvania courts have always and without exception held that the photograph or recording must be authenticated through testimony from a witness with personal knowledge who can testify that it "fairly and accurately represents that which it purports to depict." *See*, *e.g.*, *Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006). *Commonwealth v. Schwartz*, 615 A.2d 350, 357 (Pa.Super. 1992) (photographs must "accurately and fairly depict what they purport to show"), *appeal denied*, 629 A.2d 1379 (Pa. 1993). Evidence may be sufficiently authenticated by direct proof and/or circumstantial evidence, including the testimony of a witness with personal knowledge "that a matter is what it is claimed to be." Pa.R.E. 901(b). Authentication testimony may be provided by the person who took the photograph or video, or by some other witness "with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time" of recording. *Nyce v. Muffley*, 119 A.2d 530, 532 (Pa. 1956).

Under the circumstances of this case, we agree with the trial court that the testimony of the Commonwealth's chief investigator, Andrew J. Thomas, was sufficient to authenticate the photographs. As Judge St. John has prepared a thorough and well-reasoned opinion that correctly disposes of this claim, we shall affirm on that basis. (Trial court opinion, 4/29/14 at 15-23.)

The seventh issue presented avers that the trial court erred in allegedly assisting the Commonwealth as to how to examine Tyree Sanders as a witness. At trial, Sanders had difficulty remembering events that took place on the night in question. The Commonwealth requested a recess to obtain the full transcript of Sanders' testimony from Stewart's trial to attempt to revive his recollection. During the recess, the trial court discussed with both parties how the trial could proceed and discussed several ways to rehabilitate and refresh a witness's recollection.

Following our review of the record, it is clear that the trial court was acting in the interest of judicial economy when discussing the matter with the parties in chambers during recess; there is no indication that the trial court was partial to the Commonwealth or provided inappropriate guidance. We again affirm based upon our independent review of the record and the trial court's opinion. (Trial court opinion, 4/29/14 at 23-27).

Next, appellant claims the trial court erred by denying appellant's motion for judgment of acquittal upon completion of the Commonwealth's case-in-chief and upon the conclusion of all of the evidence. Appellant argues that there "was no evidence presented at trial to support a conviction of murder of the second degree, the robbery of William Basilone, or conspiracy to commit the robbery of William Basilone." (Appellant's brief at 36.) Essentially, appellant argues that assuming the conspiracy did exist, the conspiracy terminated when he found that the bar was closed, and

therefore, the subsequent criminal acts (murder of the victim) were independent acts beyond the scope of the conspiracy. "Further, nothing was taken from Basilone's person." No relief is due.

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

*Commonwealth v. Foster*, 33 A.3d 632, 634-635 (Pa.Super. 2011).

A defendant commits second-degree murder when he or she is a principal, accomplice, or co-conspirator to a statutorily-enumerated felony and a person is killed in the course of that felony's commission. 18 Pa.C.S.A. § 2502(b); *Commonwealth v. Knox*, 50 A.3d 732, 739 (Pa.Super. 2012). The defendant need not be a party to a completed crime; rather, one perpetrates a felony when he engages or is an accomplice to a completed felony, an attempt to commit a felony, or flight after committing or attempting to commit a felony. 18 Pa.C.S.A. § 2502(d).

Robbery is among the enumerated felonies that may satisfy the predicate-offense element of second-degree murder. *Id.* A person commits robbery where, *inter alia*, in the course of committing a theft, he inflicts or threatens serious bodily injury on another, commits or threatens immediately to commit any felony of the first or second degree, or takes or removes property from the person of another by force however slight. 18 Pa.C.S.A. § 3701(a)(1). The evidence is sufficient to sustain a robbery

conviction where the defendant intentionally assists his cohort with the robbery, even if he or she did not carry a weapon, employ threats, or cause injury. *E.g.*, ***Commonwealth v. Everett***, 443 A.2d 1142, 1145 (Pa.Super. 1982).

A person is an accomplice if "with the intent of promoting or facilitating the commission of the offense, he: (i) solicit[ed the principal] to commit it; or (ii) aid[ed] or agreed or attempt[ed] to aid such other person in planning or committing it." ***Commonwealth v. Murphy***, 844 A.2d 1228, 1234 (Pa. 2004), citing, 18 Pa.C.S.A § 306. Thus "if the accomplice acts with the intent of promoting or facilitating the commission of the crime, he is equally criminally liable for the acts of the principal." ***Commonwealth v. Woodward***, 614 A.2d 239, 242 (Pa.Super. 1992).

The evidence adduced at trial proved that, while being watched on security cameras, appellant and Stewart attempted to gain access to Basilone's bar to commit the robbery while wearing masks. When the men realized the door was locked, they walked off camera. Testimony was presented that they went to the alley behind the building and appellant removed his mask. The victim came around the corner, Stewart pulled a gun and he fired at the victim several times. There was evidence that a very short time passed from the moment appellant departed the scene to the fatal shooting.

Appellant argues that he and his partner did not kill the victim while in the course of the commission of a felony, as he had abandoned the conspiracy once he found the door was locked. To the contrary, the evidence amply showed that the pair was actively committing a robbery when they killed the victim. These circumstances were more than sufficient to support the jury's conviction of second-degree murder. *See*, *e.g.*, *Commonwealth v. Knox*, 50 A.3d 749, 752-757 (Pa.Super. 2012) (evidence sufficient to support juvenile appellant's conviction of second-degree murder where co-conspirator fatally shot victim as victim fled robbery); *Commonwealth v. Johnson*, 485 A.2d 397, 401-402 (Pa.Super. 1984) (evidence that co-conspirator killed victim at scene of robbery one minute after robbery ended sufficient to support appellant's conviction of felony-murder; "[w]e are of the opinion that this was a negligible passage of time during the furtherance of the conspiracy; it did not represent the termination of the robbery nor appellant's abandonment of the scheme"); *Commonwealth v. Orlowski*, 481 A.2d 952, 961 (Pa.Super. 1984) (killing of eyewitnesses is natural and probable consequence of violent conspiracy); *Commonwealth v. Olds*, 469 A.2d 1072, 1077 (Pa.Super. 1983) (a murder occurs "during the perpetration of a felony" and is therefore second-degree murder where it occurs either during an attempted robbery or flight following an attempted robbery).

Whether the victim's death was in furtherance of the conspiracy was for the jury's determination. *Commonwealth v. McNeal*, 319 A.2d 669 (Pa. 1974). Additionally, it is immaterial whether appellant actually expected Basilone's death. He may be charged with knowing that death could result from the robbery. *Commonwealth v. Martin*, 348 A.2d 391 (Pa. 1975). In this latter instance, he remains responsible for the murder.

The final issue concerns the discretionary aspects of appellant's sentence for second-degree robbery. "It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Austin*, 66 A.3d 798, 807-808 (Pa.Super. 2013) (citation omitted). This appeal is, therefore, more appropriately considered a petition for allowance of appeal. 42 Pa.C.S.A. § 9781(b). Two requirements must be met before a challenge to the judgment of sentence will be heard on the merits. *Koren*, *supra*. First, the appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence. *Id.*; Pa.R.A.P. 2119(f). Second, he must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Urrutia*, 653 A.2d 706, 710 (Pa.Super. 1995).

The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. *Commonwealth v.*

*Maneval*, 688 A.2d 1198, 1199-1200 (Pa.Super. 1997). Generally, however, in order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *Id.*

Appellant has not included in his brief the mandatory concise statement of reasons relied upon for allowance of appeal from the discretionary aspects of his sentence. A failure to include the Rule 2119(f) statement does not automatically waive an appellant's argument; however, we are precluded from reaching the merits of the claim when the Commonwealth lodges an objection to the omission of the statement. *See Commonwealth v. Myers*, 86 A.3d 286, 289, n. 3 (Pa.Super. 2014). Here, the Commonwealth has not objected.[4] Therefore, we will determine whether there is a substantial issue requiring it to review the discretionary aspects of the sentence imposed by the trial court.

Appellant complains that his sentence was manifestly excessive because the court failed to properly consider his age at the time of the offenses, that he was not the gunman, and appellant's prior record score of zero. (Appellant's brief at 38.) Such an argument does not raise a

---

[4] The Commonwealth erroneously states that "a statement of the reasons relied upon for appeal is set forth in *Martin's* brief as required by *Commonwealth v. Tuladzieki*, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f)." (Commonwealth's brief at 22 (emphasis added).) Our review of appellant's brief proves otherwise.

substantial question. ***Commonwealth v. Edwards***, 71 A.3d 323 (Pa.Super. 2013), ***appeal denied***, 81 A.3d 75 (Pa. 2013), quoting ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1222 (Pa.Super. 2011) (a panel of this court has determined an allegation that the sentencing court "failed to consider" or "did not adequately consider" various factors does not raise a substantial question that the sentence was inappropriate).

Judgment of sentence affirmed.

Wecht, J. joins the Memorandum.

Strassburger, J. files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2015

FILED IN MERCER COUNTY

2012 OCT 16 AM 11: 34

KATHLEEN M. KLOOS
CLERK AND REGISTER

10.17.12
2. DA
1. Atty Whalen

IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :
                                    :
        v.                          : ✓ No. 121 Criminal 2012
                                    :   No. 558 Criminal 2012
DEVINE A. CAMPBELL                  :

### APPEARANCES

For the Commonwealth:   *Robert G. Kochems, Esquire*
                        District Attorney's Office
                        209 Mercer County Courthouse
                        Mercer, PA   16137

For the Defendant:      *J. Jarrett K. Whalen, Esquire*
                        118 North Pitt Street
                        Mercer, PA   16137

### MEMORANDUM OPINION AND ORDER

**ST. JOHN, J.**

Defendant Devine A. Campbell who has been incarcerated in the Mercer County Jail since the beginning of 2012 is represented by a court appointed attorney, J. Jarrett K. Whalen, on a series of criminal cases. First, at 121 Criminal 2012 the defendant is charged with murder of the second degree, two counts of



robbery and two counts of criminal conspiracy to commit robbery with his co-defendant Joshua Lee Stewart for an incident that allegedly occurred on December 30, 2011. Attorney Whalen was also court appointed on March 28, 2012 to represent the defendant on a criminal case filed at 13 Juvenile 2012 (which was transferred to adult criminal court at 558 Criminal 2012) for an incident that occurred on or about December 18, 2011 where he is charged with firearms not to be carried without a license, possession of firearm by minor, terroristic threats and simple assault. In addition, Attorney Whalen was court appointed to represent the defendant on the homicide case on April 26, 2012 and on the case at 121 Criminal 2012.

Attorney Whalen was also appointed to represent a juvenile, Louis Y. Brewer, on unrelated cases at 18 Juvenile 2012 on February 29, 2012 on an escape charge and was also appointed on that date to represent him on an aggravated assault case at 540 Criminal 2012. Attorney Whalen appeared before the Honorable Robert G. Yeatts of this Court on July 20, 2012 at 18 Juvenile 2012 on behalf of Mr. Brewer at a certification hearing when the District Attorney advised the Court and Attorney Whalen that Mr. Brewer, Devine Campbell and Anthony McMillan were going to be charged with a robbery that allegedly occurred on June 1, 2012 in the Mercer County Jail, and that Attorney Whalen therefore had a conflict and could not continue to represent Mr. Brewer. Judge Yeatts entered an Order removing Attorney Whalen from Mr. Brewer's cases at 18 Juvenile 2012 and 540 Criminal 2012 on July 20, 2012. Notably, Attorney Whalen had not been appointed

2

by the Court to represent either Mr. Brewer or Devine Campbell on this alleged jailhouse robbery.[1]

Attorney Whalen filed a motion to withdraw as the attorney for Devine Campbell at Nos. 121 and 558 Criminal 2012 based upon the conflict of interest he alleges exists because of his court appointment to represent Mr. Brewer on two unrelated cases because he was about to become a co-defendant of Mr. Campbell's on a totally unrelated alleged jailhouse robbery, to which Attorney Whalen was never appointed to represent either defendant. An evidentiary hearing was held before the undersigned judge on August 31, 2012. The Commonwealth took the position that there was no conflict of interest or appearance of impropriety in the Campbell cases to which Attorney Whalen had already been appointed and the Brewer cases to which he was previously appointed. The parties submitted their respective memorandums in mid-September of 2012.

The parties concede that Mr. Brewer has no connection to the cases encaptioned above with regard to Devine Campbell. The only arguable conflict is with regard to the alleged jailhouse robbery case involving Brewer, Campbell and McMillan. Attorney Whalen has never represented any defendant on that case. That potential conflict was resolved with an immediate order preventing Attorney Whalen from representing Mr. Brewer on all of his cases. Attorney Whalen submits that he should also be removed from all of Devine Campbell's cases.

---

[1]Mr. Brewer was not charged until July 20, 2012 at 149 Juvenile 2012 with the alleged jailhouse robbery. Likewise, Mr. Campbell was not charged at 150 Juvenile 2012 until July 20, 2012.

3

Attorney Whalen argues that his continued representation of Devine Campbell in cases unrelated to Mr. Brewer, both of whom have different interests, creates the possibility that his judgment could be impaired or that his loyalty be divided if he continues to represent Devine Campbell. However, there are no facts or cogent theories that have been presented to the Court to support this argument. In point of fact, Attorney Whalen is not and has not represented multiple clients in one or more of these cases. Nor is he engaging in dual representation that would create a conflict of interest. Notably, Attorney Whalen was unable to point to any facts or circumstances where he obtained any information in representing Brewer that would call into question his loyalty to Mr. Campbell since he no longer represents Mr. Brewer on any cases and Mr. Brewer is not involved in any way on the cases to which Mr. Whalen has been appointed to represent Mr. Campbell. Nor has Attorney Whalen had any conversations with either defendant on the jailhouse robbery.

Attorney Whalen also argues that Rule 1.7 of the Rules of Professional Conduct prevent a lawyer from representing a client if he has a concurrent conflict of interest with another client. A lawyer has a concurrent conflict of interest if his representation of one client will be directly adverse to that of another or if there is a significant risk that that could occur or could materially limit the lawyer's responsibility to another client. However, there is and was not any concurrent conflict of interest in Mr. Whalen representing defendant Campbell in the above-captioned cases even though he was appointed to represent Mr. Brewer in cases unrelated to the subject cases. The potential conflict of interest arose when

4

it was determined that Mr. Campbell would be a co-defendant prospectively with Mr. Brewer in the jailhouse robbery case and was resolved by Mr. Whalen's immediate removal from all of Mr. Brewer's cases. In addition, Attorney Whalen has not been appointed to represent Mr. Campbell on the jailhouse robbery case.

Mr. Whalen also argues that his representation of Mr. Campbell is now limited since he is not appointed to represent Mr. Campbell on all of his cases, including the alleged jailhouse robbery case. Mr. Whalen therefore argues that he cannot obtain a comprehensive package plea agreement for Mr. Campbell. This argument is specious, however, because no defendant has the right to a plea bargain, a comprehensive plea agreement and/or the right to have only one attorney assigned to represent him in all of his pending cases. Furthermore, the District Attorney's memorandum dated September 14, 2012 expressly states on page 2 that Mr. Campbell would not be prevented from obtaining or pursuing a global plea agreement on all of his cases even though he may have multiple attorneys. In fact, the District Attorney noted in his memorandum that the Commonwealth would meet with all attorneys simultaneously if appropriate as it has done in the past on other cases to negotiate global plea agreements.

Thus, IT IS THE FINDING OF THE COURT that Attorney Whalen does not have a conflict of interest in representing Devine Campbell at the above-captioned numbers, nor will his representation be limited because he is not appointed to represent Mr. Campbell on all of his pending cases.

HENCE, THIS ORDER:

5

Circulated 02/27/2015 02:02 PM

FILED IN MERCER COUNTY

2012 OCT 16 AM 11: 34

KATHLEEN M. KLOOS
CLERK AND REGISTER

IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :
                                              :
          v.                                  :    No. 121 Criminal 2012
                                              :    No. 558 Criminal 2012
DEVINE A. CAMPBELL                            :

## ORDER

AND NOW, on this 15th day of October, 2012, IT IS HEREBY ORDERED that

the motion of J. Jarrett K. Whalen to be removed in the above-captioned cases is

DENIED.

BY THE COURT:

_____ J.
Christopher J. St. John, Judge

rmb

FILED IN MERCER COUNTY

2013 MAR -4 PM 2: 39

CLERK AND REGISTER

3.4.13
2.DA
1. Atty Whalen

IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :
                                :
            v.                  :       No. 121 Criminal 2012
                                :
DEVINE A. CAMPBELL              :

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND PROTECTIVE ORDER

This matter came before the Court for a hearing on February 15, 2013 on the motion of court-appointed trial counsel, Attorney J. Jarrett K. Whalen, Esquire, on his motion to withdraw as counsel for the defendant because of his prior representation of a new Commonwealth witness, Cedrick Dwight Boyd, and after the receipt of information from both defense lawyers and the District Attorney, the Court makes the following Findings of Fact:

### FINDINGS OF FACT

1.      Defendant, Devine A. Campbell, is charged with five criminal counts at the above term and number including murder of the second degree, robbery, etc., and Attorney Whalen was court-appointed to represent the defendant on April 26, 2012.

2.      This alleged incident occurred on December 30, 2011.

3.    Attorney Dustin Cole was court appointed to represent the defendant as a second chair trial lawyer on August 7, 2012.

4.    Attorney Whalen was retained to privately represent Cedrick Dwight Boyd at 331 Criminal 2011 on February 10, 2011 on serious sex offenses alleged to have occurred with a minor individual wherein he faces a potential five-year mandatory minimum term of incarceration for offenses that allegedly occurred on December 13, 2010 and where the criminal complaint was filed on January 6, 2011.

5.    Attorney Whalen represented Mr. Boyd through the preliminary hearing which was held on March 3, 2011 but was not retained to represent Mr. Boyd in the Court of Common Pleas and had no further direct communication with him after the preliminary hearing.

6.    In December of 2012, the Commonwealth provided information and discovery to Attorney Whalen that Cedrick Dwight Boyd was going to be called as a Commonwealth witness to testify to incriminating information he received while incarcerated in the Mercer County Jail from defendant Campbell in this homicide case.

7.    Attorney Whalen obtained information from Cedrick Dwight Boyd during his representation of Mr. Boyd on an unrelated case that Attorney Whalen would be able to use to substantially undercut the credibility of his former client (Boyd) at the trial in this matter.

8.    An in-camera hearing was held later this date in chambers with Attorney Whalen, the Court's law clerk and a court reporter with the consent of the

2

Commonwealth attorney to ascertain the nature and extent of the confidential information relayed by Cedrick Dwight Boyd to Attorney Whalen during their attorney/client relationship.

9. The information obtained by Attorney Whalen from his former client during his representation of Mr. Boyd is not readily available and/or ascertainable except directly from Mr. Boyd.

10. The confidential information received by Attorney Whalen from Mr. Boyd could potentially be used to impeach Mr. Boyd's credibility at the homicide trial of Mr. Campbell; however, the admissibility of this confidential information is questionable.

11. The information received in confidence by Attorney Whalen from Mr. Boyd is protected by the attorney/client privilege under Rule 1.6 of the Rules of Professional Responsibility and Attorney Whalen does not have a duty to disclose any of that information under the Rules of Professional Conduct, specifically Rule 3.3.

## CONCLUSIONS OF LAW

Defense counsel, Attorney Whalen, does not have an actual conflict of interest that precludes him from representing defendant Campbell in this homicide case because of Attorney Whalen's representation in an unrelated case of a chief Commonwealth witness, Cedrick Dwight Boyd. Furthermore, the defendant in the homicide case is not prejudiced by the continued representation by Attorney Whalen at the trial in this matter because Attorney Whalen is barred from disclosing any of the information previously received from Mr. Boyd during his

3

attorney/client relationship which existed from February 10, 2011 through July 12, 2011 and where all communications between Attorney Whalen and his former client were concluded by the end of March of 2011 before Attorney Whalen was appointed to represent the defendant in this homicide case. In addition, the information that is arguably impeachment material that was received during this confidential relationship by Attorney Whalen may not be admissible to impeach Mr. Boyd if he were called as a witness by the Commonwealth against Mr. Campbell, because it is protected by the attorney client privilege and may not otherwise be admissible under the applicable Rules of Evidence.

Furthermore, Attorney Whalen does not have a duty under the Rules of Professional Conduct per Rule 3.3 to disclose to the Court and to the parties the confidential information he received from Mr. Boyd. IT IS FURTHER THE FINDING OF THE COURT that defendant Campbell would not be prejudiced by the continued representation by Attorney Whalen because if he were removed, then new counsel would not be privy to the information anyway held by Attorney Whalen. Attorney Whalen's information in effect is no different than information parties typically have in other cases that is inadmissible because it has been suppressed or is protected by a privilege.

Hence, Attorney Whalen's motion to withdraw as counsel for defendant Campbell in this matter will be denied subject to the following Protective Order:

4

FILED MERCER COUNTY

2013 MAR -4 PM 2: 39

CLERK AND REGISTER

## IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :

       v.                :       No. 121 Criminal 2012

DEVINE A. CAMPBELL        :

### PROTECTIVE ORDER

AND NOW, on this 4th day of March, 2013, IT IS HEREBY ORDERED that the motion by Attorney Whalen to withdraw as defense counsel in this matter based upon his prior representation of the Commonwealth witness, Cedrick Dwight Boyd, is DENIED. IT IS FURTHER ORDERED that Attorney Whalen shall not participate at the trial in this matter in cross-examining Cedrick Boyd if he is called as a witness by the Commonwealth nor shall Attorney Whalen disclose any information he received from Cedrick Boyd during Attorney Whalen's representation of Mr. Boyd from February 10, 2011 through July 12, 2011, to any other person, absent further Order of Court.

BY THE COURT:

_____ J.
Christopher J. St. John, Judge

rmb



2014 APR 29 PM 1:41

KANGELI FENLOUS
CLERK AND REGISTER

IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :

v. : No. 121 Criminal 2012

DEVINE A. CAMPBELL :

## RULE 1925 OPINION

Appellant, Devine A. Campbell, was convicted by a jury on November 21, 2013 of the following crimes:

1. Robbery by attempting to enter Basilone's Bar and Threaten Another with Serious Bodily Injury with a Handgun in violation of 18 PS § 3701(a)(1)(ii);

2. Criminal Conspiracy to Commit Robbery with Joshua Lee Stewart inside of Basilone's Restaurant and Bar in violation of 18 PS §§ 903(a)(1) and 3701(a)(1)(ii);

3. Robbery by Inflicting Serious Bodily Injury to William Basilone in violation of 18 PS § 3701(a)(1)(i);

4. Criminal Conspiracy to Commit Robbery with Joshua Lee Stewart as to William Basilone in violation of 18 Pa.C.S.A. §§ 903(a)(1) and 3701(a)(1)(i); and

5. Murder of the Second Degree of William Basilone in violation of 18 Pa.C.S.A. § 2502(b).

These offenses occurred on December 30, 2011 when appellant was 17 years of age. Prior to his conviction, the United States Supreme Court ruled that



mandatory life sentences for homicides committed by persons under the age of 18 without the possibility of parole was unconstitutional. *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455 (2012). Pennsylvania law at the time of the *Miller* decision was that any person convicted of second degree murder must serve a mandatory term of life imprisonment (18 Pa.C.S.A. § 1102(b)), and the Parole Board was prohibited from paroling inmates serving a life sentence. *See* 61 Pa.C.S.A. § 6137(a)(1) (Purdon's 2010). Shortly thereafter, the Pennsylvania Superior Court held that "a mandatory sentence of a term of life imprisonment without the possibility of parole for a juvenile offender is cruel and unusual punishment and a violation of the Eighth Amendment of the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution." *Com. v. Knox*, 50 A.3d 749, 769 (Pa. Super. 2012).

Also prior to appellant's conviction in this case, the Pennsylvania legislature responded by adding Section 1102.1 to Title 18 regarding sentencing of persons under the age of 18 who are convicted of murder, which became effective October 25, 2012. Thus, the law of Pennsylvania pertinent here provided that a person convicted of murder of the second degree after June 24, 2012 who was under the age of 18 when the crime was committed, but who was age 15 or older, "shall be sentenced to a term of imprisonment the minimum of which shall be at least 30 years to life." 18 Pa.C.S.A. § 1102.1(c)(1) (Purdon's Supp. 2013).

Thus, appellant was sentenced on December 4, 2013 for the second degree murder conviction pursuant to Section 1102.1(c)(1) to serve a term of imprisonment in a state correctional facility of not less than 35 years to life. Appellant was also sentenced at the same time on the other two convictions for

2

robbery and conspiracy to commit robbery to aggregate consecutive sentences of 156 months to 40 years of imprisonment which was concurrent with the sentence imposed for second degree murder. Obviously, appellant is eligible for parole on the second degree murder sentence as well as the other sentences.

Appellant filed a timely post-sentence motion but did not challenge the legality of the sentence for murder of the second degree. Instead, his sole challenge to the sentence is that the Court should not have exceeded the mandatory minimum term of incarceration of 30 years and that it was an abuse of discretion to impose a 35 year minimum sentence for his role in the murder of William Basilone by his co-defendant Joshua Lee Stewart during the commission of an armed robbery. The post-sentence motion was denied and the appellant filed a timely Notice of Appeal to the Superior Court of Pennsylvania.

Appellant raised the following nine issues in his Statement of Errors Complained of on Appeal:

1. The Trial Court erred as a matter of law and/or abused its discretion in that the Trial Court denied undersigned counsel's Motion to Withdraw on October 15, 2012 based upon undersigned counsel previously representing Louis Yonte Brewer.

2. The Trial Court erred as a matter of law and/or abused its discretion in that the Trial Court denied undersigned counsel's Motion to Withdraw on March 4, 2013, based upon undersigned counsel having previously represented Cedrick Boyd, and further prohibiting undersigned counsel from having any involvement in the investigation, preparation and/or cross-examination of Mr. Boyd, or relative to any defense witness who would potentially rebut any testimony presented by Mr. Boyd, which prevented undersigned counsel from effectively representing Defendant.

3. The Trial Court erred as a matter of law and/or abused its discretion in that the Trial Court denied Defendant's Motion for Suppression relative to statements and written material between Defendant and Cedrick Boyd on March 28, 2013.

3

4. The Trial Court erred as a matter of law and/or abused its discretion in that the Trial Court denied Defendant's Motion in Limine relative to autopsy photographs and x-rays of the victim on May 13, 2013.

5. The Trial Court erred as a matter of law and/or abused its discretion in that Trial Court denied Defendant's Motion for Continuance and Related Relief, filed on November 7, 2013, based upon new potential defense witnesses coming forward, the court appointed private investigator not completing tasks assigned to him, the need to find an untainted jury pool, and the potential for a jury viewing of the crime scene at the same time of the year as the alleged crime.

6. The Trial Court erred as a matter of law and/or abused its discretion in that the Trial Court denied in part Defendant's Motion in Limine relative to the conspiracy to impregnate the Vincent sisters and photographs obtained of co-defendant Joshua Stewart and Defendant via Joshua Stewart's Facebook page on November 14, 2013.

7. The Trial Court erred as a matter of law and/or abused its discretion in that the Trial Court assisted the Commonwealth in advising how to conduct direct examination of Commonwealth witness Tyree Sanders.

8. The Trial Court erred as a matter of law and/or abused its discretion in that Trial Court denied Defendant's Motion for Judgment of Acquittal upon Completion of the Commonwealth's Case and Defendant's Motion for Judgment of Acquittal upon Conclusion of All Evidence, both on November 21, 2013.

9. The Trial Court erred as a matter of law and/or abused its discretion in that the sentence imposed by this Honorable Court is manifestly excessive and unreasonable, inasmuch as the Trial Court's sentence exceeded the mandatory minimum, failed to adequately consider Appellant's age, the rehabilitative aspect of sentencing, and the fact that the Defendant was not the shooter in this case.

I. DID THE TRIAL COURT ERR IN DENYING THE LEAD DEFENSE COUNSEL'S MOTION TO WITHDRAW WHEN HE WAS TEMPORARILY APPOINTED TO REPRESENT LOUIS YONTE BREWER?

The custom in homicide cases in Mercer County is to court appoint the

Public Defender's Office of Mercer County which would assign two lawyers to the

4

case. However, in this case, the Public Defender's Office was already representing appellant's co-defendant, Joshua Lee Stewart.[1] Accordingly, Attorney J. Jarrett K. Whalen was appointed as conflict counsel as appellant's lead defense counsel and Attorney Dustin Cole was appointed to assist in appellant's defense. Attorneys Whalen and Cole at all times had their own separate and independent law offices.

Appellant was arrested and incarcerated shortly after this homicide in the Mercer County Jail where he stayed throughout the case until he was sentenced. While incarcerated, appellant was allegedly involved in an assault/"jail house robbery" which allegedly occurred on June 1, 2012. Louis Y. Brewer was also an inmate in the Mercer County Jail at the time and had a juvenile petition pending at 18 Juvenile 2012 for an alleged escape on February 29, 2012. One of appellant's defense attorneys, Attorney Whalen, was appointed to represent Mr. Brewer at 18 Juvenile 2012 being a case unrelated to appellant's homicide case. When Attorney Whalen appeared in another courtroom in the Mercer County Court of Common Pleas to represent Mr. Brewer at a certification hearing on July 20, 2012, Attorney Whalen and the Court was advised by the Commonwealth that Mr. Brewer and appellant were going to be charged with the jailhouse robbery and that Mr. Whalen could not continue to represent Mr. Brewer. Thus, Attorney Whalen was removed on all of Mr. Brewer's cases on July 20, 2012 and was not appointed to represent appellant on the jailhouse robbery case.

---

[1] Joshua Lee Stewart was convicted by a jury two months before appellant at 122 Criminal 2012 (as the gunman who actually shot and killed William Basilone) of both first and second degree murder, robbery and criminal conspiracy with appellant to commit robbery. Mr. Stewart was sentenced on September 26, 2013 by the undersigned judge to serve a mandatory life sentence without parole because he was 18 years of age at the time of the offense.

Attorney Whalen filed a Motion to Withdraw in the homicide case as the attorney for appellant because he had been appointed to represent Mr. Brewer on two unrelated cases. Notably, Mr. Brewer was not a witness for any party at any time during this homicide case, nor was there alleged to be any information obtained by Attorney Whalen from the Brewer case that would compromise him in the homicide defense of appellant.

An evidentiary hearing was held on August 31, 2012 at which time the parties stipulated to the facts and the Court later denied Attorney Whalen's Motion to Withdraw in the homicide case as appellant's attorney by Memorandum Opinion and Order dated October 15, 2012. The Superior Court is directed to that Memorandum Opinion for a fuller explanation of the Court's refusal to remove Attorney Whalen to be appellant's lead counsel in this homicide case. It should be noted that appellant had several cases pending at the same time as the homicide case and one of Attorney Whalen's theories as to why he should be removed as appellant's homicide attorney was that if he could not represent appellant on all cases, that appellant would be compromised in his defense by being unable to negotiate a global plea agreement with all cases through one attorney. Appellant, of course, is not entitled to have the same court appointed attorney on all cases but the Court generally attempts to do that in a small county for judicial economy. Nonetheless, the failure to do that does not amount to error and the lower court's Order refusing to remove Attorney Whalen as appellant's attorney should be affirmed.

6

II.   WHETHER THE TRIAL COURT ERRED IN DENYING LEAD DEFENSE COUNSEL'S MOTION TO WITHDRAW BECAUSE HE PREVIOUSLY REPRESENTED THE JAILHOUSE SNITCH, CEDRICK BOYD?

Appellant's lead defense counsel Whalen filed a second Motion to Withdraw based on an alleged conflict of interest since he previously represented Cedrick Boyd in criminal proceedings.  Mr. Boyd was incarcerated throughout the duration of this murder case and was transported back and forth between the Mercer County Jail and the state correctional facility at Albion.  During that timeframe, Mr. Boyd claimed that he had received written correspondence and/or oral representations from appellant and his co-conspirator regarding their alleged participation in the Basilone homicide/robbery.

An evidentiary hearing was held on February 15, 2013 where it was established that Attorney Whalen was privately retained by Mr. Boyd on February 10, 2011 to represent him at a preliminary hearing held on March 3, 2011 on sexual assault charges in Mercer County.  *See* Transcript dated March 15, 2013 at pg. 5-7.  Furthermore, at that preliminary hearing Mr. Boyd discussed the simple assault charge that was also pending against him regarding the same victim. Attorney Whalen was not retained by Mr. Boyd to represent him any further and his last contact with Mr. Boyd was on March 3, 2011 at the preliminary hearing.

Attorney Whalen indicated that he obtained information from Mr. Boyd during his representation that was confidential and which he would be duty bound to use at appellant's trial to impeach him if Mr. Boyd were to testify.  Mr. Whalen indicated that he would be able to cross-examine Mr. Boyd by using confidential information that would totally impeach Mr. Boyd.  Later on February 15, 2013 the Court held an in-camera hearing where Mr. Whalen put on the record in the

7

absence of the Commonwealth's attorneys and defense attorney Cole the precise information that he would use on cross-examination. The transcript of that in-camera hearing has been sealed.

The trial court subsequently entered an Order denying Attorney Whalen's Motion to Withdraw in appellant's murder case, but ordered that Attorney Whalen was prohibited from participating in any way in the cross-examination of Mr. Boyd if he were to testify, or in preparing Attorney Cole for that cross-examination and/or revealing any confidential information to Attorney Cole or any other person that came from Mr. Boyd.

While appellant's murder case slowly made its way to trial, the Commonwealth continued to represent that they intended to call Mr. Boyd in its case in chief to incriminate appellant with regard to his role in this homicide/robbery. Mr. Boyd was also listed on the Commonwealth's witness list. **However, Cedrick Boyd was never called by the Commonwealth at appellant's jury trial.** Hence, if the trial court's ruling denying Attorney Whalen's motion to withdraw was in error, then it is harmless error since Mr. Boyd played no role in appellant's trial in his conviction. Nonetheless, this Court suggests that the Motion to Withdraw was properly denied and that it should be affirmed on appeal.

III.    DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS INFORMATION OBTAINED BY THE JAILHOUSE SNITCH, CEDRICK BOYD?

Once the defense learned that the Commonwealth had a witness named Cedrick Boyd who it intended to call at trial to testify against appellant and his co-defendant at his separate trial, from information allegedly obtained while he was an inmate at the Mercer County Jail with appellant and his co-defendant, both

8

defendants filed motions to suppress the information obtained by Mr. Boyd primarily on the theory that he was acting as a listening post for the government and obtained this information without advising appellant of his constitutional right to remain silent and/or consult with an attorney. Evidentiary hearings were held on this suppression motion on March 6 and 28, 2013 at which time both co-defendants were present and represented by their respective defense teams. Appellant's second lawyer, Dustin Cole, conducted the cross-examination of Cedrick Boyd in light of this Court's Order prohibiting Attorney Whalen from being involved.

Following the hearings, the Court made Findings of Fact and Conclusions of Law and entered an Order on March 28, 2013 denying appellant's motion to suppress the information obtained by Cedrick Boyd allegedly from both defendants. The suppression court held that appellant's Fifth and/or Sixth Amendment Rights were not violated in that Cedrick Boyd was not acting as a government informant or agent at any time that he received the alleged incriminating information. The appellate court is directed to the Findings of Fact and Conclusions of Law dated March 28, 2013 and suggests that the suppression court's ruling be affirmed on appeal. Furthermore, this issue is both without merit and moot because Cedrick Boyd as indicated above did not testify at appellant's jury trial. Thus, any err, if any, committed by the suppression court would be harmless.

IV. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION IN LIMINE REGARDING CERTAIN AUTOPSY PHOTOGRAPHS AND X-RAYS OF THE VICTIM'S INJURIES?

Defense counsel filed a Motion in Limine on May 13, 2013 challenging various items of evidence that the Commonwealth had previously indicated it had

9

intended to introduce at the trial in this matter. That motion was granted in part and denied in part by the trial court and the Commonwealth also agreed on its own not to use various exhibits as well. A status conference/pre-trial hearing was held on May 13, 2013 which was transcribed.[2]

Argument was conducted on May 13, 2013 at a status conference on this Motion in Limine. *See* May 13, 2013 Transcript pgs. 4-7. Appellant's attorney was essentially arguing that the photographs of decedent's body on the autopsy table depicting the various entry and exit wounds and the x-rays demonstrating the presence of bullet fragments, were irrelevant because appellant was willing to stipulate to the cause of death. However, the Commonwealth was not willing to stipulate to cause of death and in fact called at trial the medical examiner to show the various entry and exit wounds and to identify various bullet fragments that were removed from the body which were marked as other Commonwealth exhibits. (See Trial Transcript, Vol. II, pgs. 38 to 64 for testimony of Dr. Joseph S. Ohr and the admission of these exhibits.) Part of the Commonwealth's motive behind presenting these photographs was to demonstrate that a single weapon being a .22 caliber was used to shoot Mr. Basilone multiple times at various angles as he tried to get away. It is notable that appellant's attorney was not arguing that the photographs were too bloody or too shocking.

The record of the May 13, 2013 argument on appellant's Motion in Limine does not establish exhibit numbers to which the motion is applicable when these

---

[2] The trial court had previously held a pre-trial conference on April 25, 2013 at which time the Commonwealth displayed through the evidence presentation equipment close to 200 photographs that could be viewed by the Court, defense attorneys, appellant and the co-defendant. *See generally*, Transcript dated April 25, 2013, pgs. 15 to 42. The preview of autopsy photos and x-rays begins on p. 26.

photographs were ultimately admitted at trial. Accordingly, the trial court has examined the transcript of the trial and the exhibits and has identified 11 photographs[3] that are photographs of the decedent's naked body apparently lying on an autopsy table prior to the actual autopsy itself. These photographs are in color and are from various angles showing the front, back and side of the decedent where the various bullet wounds entered and/or exited his body. These photographs contained no blood and merely appear to depict puncture wounds. These photographs also are not inflammatory, gory in any way, nor shocking. They were also admitted without objection at trial. *See* Tr. Transcript Vol. II, at pg. 62.

Appellant was also objecting to x-rays and the trial court has reviewed the record and identified four trial exhibits which are photographs of x-rays purportedly depicting the presence of bullet fragments in decedent's body.[4] These photographs/x-rays are in color but are not inflammatory, gory, or in any other way offensive or shocking. They are relevant to show that the fragments of bullets retrieved from decedent's body were eventually identified as .22 caliber and are also relevant to show the use of a deadly weapon on vital parts of the decedent's body to support the Commonwealth's burden to prove elements of the robbery and homicide charges. These were also admitted without objection at trial. *Id.*

While trial counsel did not object at trial to the admission of these exhibits now being challenged on appeal, he preserved his objection in his Motion in Limine. The Court's comparison of the record of the slide show preview on April

---

[3] *See* Commonwealth exhibits 43, 44, 47, 53-57, 61, 62 and 65.
[4] *See* Commonwealth exhibits 50, 58 and 66-67.

11

25, 2013 with the admitted trial exhibits, in conjunction with the Court's intimate knowledge of the case, reveals that the trial exhibits of the autopsy and x-rays are the same as those objected to by the defense in its Motion in Limine filed May 13, 2013. Nonetheless, the Commonwealth has the right to present evidence to prove its case rather than enter into stipulations regarding the cause of death as it did here. Accordingly, the trial court's ruling denying the Motion in Limine should be affirmed.

V.  DID THE TRIAL COURT ERR IN DENYING APPELLANT'S PRE-TRIAL MOTION FOR A CONTINUANCE OF THE TRIAL AND RELATED RELIEF?

Appellant's attorney filed motions to continue the trial from the November 2013 trial term with motions filed on November 7 and 12, 2013. Appellant argued that the defense needed additional time to allow its court appointed investigator to interview several witnesses to impeach the credibility of the jailhouse snitch, Cedrick Boyd. In addition, defense believed that it may be requesting a view of the alleged crime scene and that it would be more appropriate for that view to occur closer to the date of the offense which was at the end of December. Finally, appellant believed that a continuance was needed to allow further time to pass between the guilty verdict on his co-defendant's trial which occurred on September 17, 2013 to help insure that they did not have a tainted jury pool from the adverse press coverage of the first trial. Appellant also wanted the Court to appoint an attorney to help Attorney Cole prepare to cross-examine the jailhouse snitch and present impeachment witnesses because Attorney Cole lacked experience and lead defense counsel (Atty. Whalen) was conflicted out of this part of the case.

The motions were denied. The parties were able to pick an impartial jury, no view of the scene was requested and the jailhouse snitch did not testify.

The merits of these motions to continue the trial were discussed in chambers, off the record, with the attorneys prior to jury selection and in court on November 12, 2013. The motion itself actually sets forth the grounds for the request, and the trial court formally entered an Order denying the motions. *See* Transcript dated November 12, 2013. Appellant himself stated to the Court under oath that he did not want a continuance. *Id.* at pgs. 14-15. In any event, appellant's ground for err on the refusal to grant a continuance and for assignment of a third attorney is both moot and meritless.

Appellant had previously filed a motion for a change of venue because of pre-trial publicity which was held in abeyance until completion of jury selection which included general voir dire as well as individual voir dire. The motion for change of venue was denied by Order dated November 14, 2013 upon selection of a fair and impartial jury. Thus, it is apparent that the parties were able to pick a fair and impartial jury despite the pre-trial publicity and the recent conviction of the co-defendant of murder in the first degree, murder of the second degree and two counts of robbery and conspiracy to commit robbery.

The grounds that the Court erred in denying the motion to continue the trial to get it closer to the end of December is also without merit. First of all, the defense never requested a view of the alleged crime scene (Id. at 35) and even if they had, the view would have been substantially similar because the trial was occurring just before winter and the only difference would have been a few bushes or trees that might have had leaves on it in November which actually would have

13

aided the defense theory that Commonwealth witness, Tyler Kalenic, could not have seen the shooting by looking up the alley from the rear of his home. In addition, there were numerous photographs of the scene both at nighttime when the crime occurred and in the following days from multiple angles which enabled the defense to present its theory that Mr. Kalenic's view of the shooting in the alley beside Basilone's Bar was obstructed in some way.

Finally, the most merit in the motion to continue was that the court appointed investigator had not completed interviews of potential witnesses who would impeach the credibility of Cedrick Boyd, if he were to testify on behalf of the Commonwealth. There were four or five potential defense witnesses that needed to be interviewed who were incarcerated in state correctional facilities. Upon learning of those individuals, the trial court ordered the Sheriff of Mercer County to transport them to the Mercer County Jail so that they could be interviewed by the defense and used at trial as witnesses. As it turned out, however, the Commonwealth elected not to call Cedrick Boyd at this trial. Hence, the jury did not have any information about Mr. Boyd or any jailhouse snitch, and that there was no need for any of these rebuttal defense witnesses so they were transported back to their various institutions during the trial. Accordingly, the trial court respectfully recommends that this assignment of err be denied.

Appellant's continuance motion also requested special relief in the form of the appointment of a third attorney for the sole purpose of assisting Attorney Cole in preparing for and cross-examining Cedrick Boyd. This assignment of error is MOOT since Mr. Boyd was not called to testify. Furthermore, Attorney Cole was capable of fulfilling this role based upon his training and experience. *Id.* at pgs.

14

15-17. He had previously examined Mr. Boyd at the suppression hearing, observed another defense attorney cross him at the co-defendant's trial and had a transcript of testimony. Hence, the trial court suggests that this assignment of error is both moot and without merit.

VI.   DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION IN LIMINE TO PREVENT TESTIMONY THAT TWO FEMALE WITNESSES WERE IMPREGNATED BY THE RESPECTIVE BROTHERS OF THE CO-DEFENDANTS AFTER THE CRIME OCCURRED, AND EXCLUDE PHOTOGRAPHS OF APPELLANT AND HIS CO-DEFENDANT FROM CO-DEFENDANT'S FACEBOOK PAGE?

Defense counsel filed a Motion in Limine on November 1, 2013 to exclude:

1.   Evidence that the brothers of appellant and his co-defendant intentionally impregnated two Commonwealth witnesses;

2.   Appellant's prior crimen falsi record;

3.   Facebook photographs of appellant and co-defendant; and

4.   Threats allegedly made to the jailhouse snitch.

The Commonwealth agreed not to introduce any evidence of the impregnation as a plot to divert the Vincent sisters' testimony, but it did plan to introduce testimony that they had children to their brothers after the homicide. The Commonwealth also agreed not to introduce evidence of threats to Mr. Boyd, unless the defense opened the door. The objection as to Mr. Boyd became moot since he did not testify. The Commonwealth's evidence at trial was that Devine Campbell and Joshua Stewart had been in contact throughout the evening of these crimes with two sisters, Cierra Vincent and Olivia Vincent, and that these sisters picked them up near the crime scene in their car and took them away after the robbery/homicide. Cierra Vincent was the operator of that motor vehicle and

15

the females were not implicated in the crimes and did not testify to any specific knowledge of the crimes. Nonetheless, Cierra Vincent was called at the trial to testify with regard to various cell phone contacts she had with appellant during the evening and closer to the time of the shootings, and that she actually picked appellant and the co-defendant up shortly after the shooting at the home of Tyler Kalenic which was located just down the alley from the crime scene.

Cierra Vincent testified that she was 19 on December 30, 2011 when this offense occurred and that she was with her younger sister Olivia Vincent who was 15 years old at the time of the alleged offense and they are now 21 and 17, respectively. Tr. Transcript Vol. II, pg. 491, 506-508. After walking the jury through the various cell phone contacts between herself and appellant,[5] she was asked if she had any children to which she responded she had a 9 month old boy born February 7, 2013 and that Eric Stewart was the father of that child. *Id.* at 507. She also testified that he is the brother of co-defendant, Joshua Lee Stewart, and that her sister Olivia has a girl who is 10 months old and was born on January 16, 2013 and that the father of her daughter, Dre Campbell, is the brother of the appellant. *Id.* at 507-508.

It was this testimony that appellant's attorney attempted to prohibit because of the possibility that the jailhouse snitch would testify that he was told by appellant, that appellant and his co-defendant hatched a plot while in jail to have their brothers impregnate the Vincent sisters theoretically in the hopes of preventing

---

[5] Ms. Vincent knew appellant and his co-defendant, and knew that appellant did not have a cell phone and was using co-defendant's cell phone. *Id.* at 498. She had Mr. Stewart's phone contact information from her prior phone contacts with him. *Id.* The Commonwealth showed photographs taken from her cell phone depicting the time and duration of contacts between her and appellant the night of the murder. *See* Commonwealth's Exhibits 23, 25, 28 through 32, and 36. *Id.* at pgs. 499-504.

16

them from testifying at the trial. Of course, Cedrick Boyd never testified so the jury never learned of that alleged plot, nor of any alleged threats against him.

Defense counsel's argument is thus reduced to the contention that the jury should not even be permitted to know the blood relationship of these young women to either defendant. In short, the trial court denied the motion as to this testimony because that connection might be relevant to either side in establishing or challenging the credibility of Cierra Vincent's testimony. The Superior Court is directed to pages 48-57 for a lengthy discussion between the attorneys and the Court for the Court's rationale. Tr. Transcript, Vol. I, pgs. 48-57.

The Court also engaged in a lengthy discussion with the attorneys on the record about the foundation necessary to admit photographs of appellant and/or his co-conspirator, Joshua L. Stewart, from Facebook. *Id.* at pgs. 36-48. Defense counsel contended that the Commonwealth cannot establish a foundation as to authenticity of DIGITAL PHOTOGRAPHS without calling a witness from Facebook or a cell phone company.

The Commonwealth presented various witnesses and numerous exhibits at trial to establish that appellant, co-defendant Joshua Lee Stewart, and a juvenile named Tyler Kalenic conspired to rob Basilone's Bar and Restaurant at gunpoint. The bar had video surveillance cameras mounted on the outside and inside of the bar which captured some of the actions of these three individuals when they tried to carry out this armed robbery. The video surveillance recordings were played several times to the jury through several witnesses who walked them through that night and identified each of the individuals depicted in the video. Tyler Kalenic was not charged by the Commonwealth as he eventually abandoned his efforts in

17

the alleged robbery, so he testified under a grant of immunity. His testimony clearly identified appellant and co-defendant Stewart as the two individuals depicted in the video surveillance recordings as well as himself when he entered the bar earlier in the evening and faked purchasing a pizza so that he could determine how many people were in the bar. *See* Commonwealth Exhibit 71 which is the flash drive of the video surveillance recordings.

The Commonwealth also introduced still photographs taken from the surveillance video of the alleged robbers. *See* Commonwealth Exhibits 5 through 8. The co-defendant, Joshua Lee Stewart, who was identified by various Commonwealth witnesses, is seen on the videos wearing two different hoodie sweatshirts. He is seen at one point wearing a bright yellow hoodie with the word "Steelers" in black letters across the chest and in other parts of the video is seen wearing a light gray hoodie sweatshirt with the "Champion" logo on it with a large "C" on the front. The Steeler hoodie was ultimately seized from the co-defendant when he was booked at the police station on January 3, 2012. Also confiscated from the co-defendant was his cell phone and a "D"-ring which contained a key and a small rectangular Rite Aid card. The ring itself was pinkish in color. The Commonwealth also seized a gray hoodie sweatshirt bearing the Champion logo from the home of Tyler Kalenic which was admitted as Exhibit 72. Appellant was identified in the surveillance video as wearing the same dark colored hoodie at all times.

In order to prove that the individuals in the surveillance video were the appellant and the co-defendant Stewart, the Commonwealth also introduced the co-defendant's cell phone which was admitted into evidence without objection as

18

Commonwealth Exhibit 17. The Commonwealth then extracted several photographs from the co-defendant's cell phone which were admitted over objection as Commonwealth's Exhibits 22, 23 and 131. Commonwealth Exhibits 22 and 23 both appeared on co-defendant's Facebook page as well and were admitted into evidence as Commonwealth's Exhibits 38 and 39, respectively. Commonwealth Exhibits 22 and 23 are photographs from the co-defendant's cell phone of pictures he purportedly took of himself in a mirror using that cell phone wearing either a yellow Steelers hoodie sweatshirt or a light gray Champion hoodie sweatshirt. Commonwealth Exhibit 23 is a photograph of appellant and co-defendant apparently with co-defendant's cell phone which was uploaded to Facebook and admitted as Commonwealth Exhibit 39. Finally, Commonwealth Exhibit No. 9 is a self-portrait portraying co-defendant Stewart on Facebook wearing a Champion hoodie sweatshirt with a D-ring hanging from his waist.

The Motion in Limine specifically attacks the admissibility of any Facebook photographs but does not attack the admissibility of cell phone photographs. Nonetheless, it is clear throughout the transcript that defense counsel widened his objection orally at trial to include the cell phone photographs. All of these photographs were introduced into evidence by the Commonwealth's chief investigator, Andrew J. Thomas. He testified at the beginning and the end of the Commonwealth's case in chief about the various exhibits. *See generally* Trial Tr., Vol. I, pgs. 219 through 227; and Vol. II, pgs. 113-114. Officer Thomas testified as to Exhibits 22, 23 and 131 that those photographs were on co-defendant's cell phone which was admitted into evidence as Commonwealth's Exhibit 17. The photographs were printed out and used at trial to show the co-defendant wearing

19

the light gray Champion hoodie sweatshirt and the yellow Steeler hoodie sweatshirt that appear to be the same as were worn by co-defendant Stewart in the video surveillance tape. The single photo (Commonwealth Exhibit 23) depicting appellant and co-defendant together was to prove that they knew each other.

Defense counsel did not challenge the relevance of these photographs but simply challenged their admissibility based upon both the best evidence rule and the lack of proper authentication. During the argument prior to trial on the Motion in Limine, defense counsel's argument was limited to the Facebook photographs and he argued that the best evidence rule required that a representative from Facebook be called to establish whose Facebook account it was and that there had been no alteration or change in the photographs posted on that account. This of course would require the Facebook company to bring in the hardware that actually stored the digital images of appellant and co-defendant. The best evidence therefore would be the actual hardware storage of the images which would then be portrayed onto a screen with a printout to follow as the actual exhibit. The Commonwealth here was not required by the Court to bring the company representative into Court with the computer hardware and there is no record to indicate the size of that hardware or whether or not it can even be transported to Court. A requirement that the Commonwealth prove that there has been no alteration or doctoring without evidence of such is an unreasonable burden to place on a party under the best evidence and authentication rules of evidence, so long as the record contains evidence that the pictures are what they purport to be.

20

Pennsylvania Rule of Evidence 901 simply requires the proponent of a piece of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(a). The rule also lists some examples of how to satisfy the identification and/or authentication requirement. Rule 901(b)(1) indicates the most basic rule of authentication which allows the item to be identified through testimony of a witness with knowledge. Hence, Officer Thomas' testimony at trial that all of the photographs of appellant and his co-defendant depicted each of them, since he came to know each of them throughout his investigation, and that Facebook photographs were obtained pursuant to a search warrant much later in the investigation. Hence, his testimony alone establishes the proper identification and authentication of these photographs of what they depict to be, *i.e.* photographs of appellant and co-defendant.

Furthermore, the existence of Facebook photographs 38 and 39 obviously were transferred from the co-defendant's cell phone as Officer Thomas testified that they appear to be the same photographs. Similarly, it would be unreasonable to require the Commonwealth to bring in a representative of the cell phone company to testify that the digitally stored photographs on the cell phone were accurate and unadulterated. Only if evidence was produced by the defense that fabrication and/or alteration of photographs occurred, should the Commonwealth be strapped with the burden of proving that they were not altered rather than in the first instance being required to prove that they were not touched up.

In the event that the appellate courts take the position that Exhibits 9, 38 and 39 from Facebook did not constitute best evidence and/or were not properly authenticated or identified, it would be harmless error because Exhibits 38 and 39

21

were also admitted into evidence as photographs printed directly from co-defendant's cell phone as Exhibits 22 and 23 and there is no special social networking foundation requirement applicable to cell phone photographs that may arguably be applicable to social media photographs. Moreover, since the item that actually stored the photographs (the cell phone) was actually in evidence (which was not turned on or viewed by anyone during the trial), and the photos printed therefrom actually show the phone in the picture as the camera, the photos are almost self-identifying. Hence, it is suggested that the appellate courts affirm the Court's ruling in denying the Motion in Limine as to these photographs as well as the trial rulings admitting these photographs.

Finally, defense counsel's Motion in Limine sought to keep out various prior convictions of the appellant. Paragraph 9 of the Motion in Limine lists some minor misdemeanor offenses including theft by unlawful taking, a misdemeanor of the third degree. At oral argument on this motion, defense counsel conceded that this theft charge is a proper crimen falsi offense that could be used to impeach the defendant's credibility at trial if he were to testify. Accordingly, defense counsel withdrew the request to exclude the theft charge in his Motion in Limine. The Commonwealth also agreed not to use any of the other minor misdemeanors which included possession of drug paraphernalia, simple assault, and summary harassment and defiant trespass offenses as well as a compulsory school attendance violation. Tr. Transcript Vol. I, pg. 37.

In fact, at the trial in this matter the appellant elected to testify in his own defense and he testified on direct examination that he had a prior conviction for a misdemeanor theft charge. Tr. Transcript Vol. II, pgs. 226-227. Moreover, the

22

Commonwealth did not seek to introduce any other prior offenses. Therefore, it is clear that the Motion in Limine was properly addressed as to prior convictions and should be sustained on appeal.

VII.    WHETHER THE TRIAL COURT ERRED IN ALLEGEDLY ASSISTING THE COMMONWEALTH ON HOW TO EXAMINE A COMMONWEALTH WITNESS.

The Commonwealth called Tyree Sanders as a brief witness at trial. Mr. Sanders was seen walking past Basilone's Bar on the sidewalk on the video surveillance tape and meeting appellant, co-defendant Stewart and Tyler Kalenic briefly about a half a block from the bar. However, Mr. Sanders was having an extremely difficult time on direct examination recalling the events of that evening, admitting that he could see himself walking on the video surveillance tape but not even remembering that he had testified at the preliminary hearing and the co-defendant's trial in the same witness chair in this matter. Tr. Transcript, Vol. II, pgs. 339 to 344. A brief recess was then taken so that the district attorney could retrieve additional documents from his office to attempt to revive the witness's recollection. *Id.* at pgs. 343-44.

During the recess, the attorneys met with the Court in chambers off the record because the Commonwealth was surprised by the sudden lapse of memory of Tyree Sanders. The recess lasted 54 minutes (*Id.* at 344) but only part of that time was spent in chambers.

After the recess, defense counsel reversed its position and objected to the Commonwealth being permitted to treat Mr. Sanders as a hostile witness. The Commonwealth stated that its request was based upon the surprise of the witness's testimony, so the objection was overruled. *Id.*

23

The Commonwealth proceeded to lead Mr. Sanders through the videotape surveillance to point out various objects on the video so that he can see himself and recall having a brief encounter with the robbers. Mr. Sanders slowly began to acknowledge his presence on the video and that he walked up the hill and crossed Roemer Boulevard and met three individuals in the middle of that street. *Id.* at 350. Mr. Sanders ultimately adopted the video as an accurate depiction of what he did that night and the fact that he had a brief encounter with three people. *Id.* at 352. He also acknowledged having a little memory problem so the Commonwealth showed him a copy of his trial testimony from September 13, 2012 against the co-defendant. *Id.* at 353. Mr. Sanders ultimately acknowledged that the transcript contained his sworn testimony and it in fact refreshed his recollection that he did testify before. *Id.* at 354. The Commonwealth attorney then walked Mr. Sanders through various portions of his prior testimony to revive his recollection of meeting up with three friends briefly that night. *Id.* at 354-57.

Eventually, Mr. Sanders' recollection was refreshed that he met up briefly in the middle of Roemer Boulevard as indicated on the videotape with friends named Knoxx, Louie and Tylor. He did not know their full names at the time and he was able to identify Louie as the appellant seated at counsel table during the trial. *Id.* at 356-57. Three other witnesses testified on the second day of testimony at the trial on November 19, 2013 after Mr. Sanders left the stand.

The following morning, defense counsel requested to meet with the Court in chambers on the record. Tr. Transcript, Vol. II, pgs. 4-9. These few transcript pages contained recollections of the Court as to the unrecorded discussion in chambers during the recess of Tyree Sanders' testimony. At that time, defense

24

counsel wanted to place on the record an objection to the guidance given by the Court allegedly during the unrecorded in-chambers discussion in the middle of the Sanders' testimony. The discussion on this objection tried to memorialize the unrecorded in-chambers conference from the day before. The Court provided its recollection of the unrecorded chambers meeting by indicating that Mr. Sanders was now called for the third time as a witness for the Commonwealth. *Id.* at 6. He had been a witness at the preliminary hearing on January 19, 2012 and as a Commonwealth witness at the first homicide trial of the co-defendant, Joshua Lee Stewart, on September 13, 2013. As memorialized by the Court, the discussion surrounded the various ways to rehabilitate and/or refresh the recollection of a witness with a failed memory. Included in that discussion was a way to see if the witness would adopt portions of a transcript from prior testimony as an accurate depiction of his prior sworn testimony. *See* Pa. Rule of Evidence 803.1(3). Naturally, it was unknown how Mr. Sanders would respond to various questions after the recess about whether or not he accepted the transcript as an accurate depiction of his testimony and/or whether it would refresh his recollection. Thus, various avenues were discussed generally as appropriate means of securing Mr. Sanders' truthful testimony in this case.

Defense counsel objects that this was in effect coaching the Commonwealth on how to proceed in questioning Mr. Sanders. However, the goal of the Court was to review the appropriate Rules of Evidence with the parties out of Court to streamline the process in Court. Moreover, the Court was not being biased to the Commonwealth in this discussion. For example, the record reflects (*Id.* at pg. 9) that there was still a *Crawford* issue that would need to be addressed

25

before pages 7 and 8 of Mr. Sanders' testimony from the co-defendant's trial two months earlier could be admitted into evidence. Defense counsel asked the Court what the *Crawford* issue was and the Court advised defense counsel that Mr. Sanders was not subjected to cross-examination by Mr. Campbell's defense team at the Stewart trial, and that there was an argument that any testimony not subjected to Mr. Campbell's cross-examination may not be admissible. *Id.* Thus, the Court was balanced in its treatment of both the Commonwealth and appellant, which demonstrated the Court's efforts to conduct a fair trial for both parties in accordance with the Rules of Evidence.

In addition, on another occasion, the Court also provided instructions to Attorney Dustin Cole for the defense with regard to the possible cross-examination of the jailhouse snitch, Cedrick Boyd, by Mr. Cole. *See* Tr. Transcript, Vol. I, pgs. 47-48. The Court pointed out to Attorney Cole (who was present two months earlier at the Stewart trial to observe the testimony of Mr. Boyd) that he had previously cross-examined Mr. Boyd and that he had also observed another attorney at Mr. Stewart's trial use a certain technique of cross-examination. He may want to consider and weigh his options and tactics in his cross-examination of Mr. Boyd if he were to testify at the Campbell trial based upon the success or failure of techniques used previously by Attorney Cole or other defense counsel. This passage is simply pointed out to the appellate courts to demonstrate the even-handed approach of the trial court and the lack of any prejudice to appellant in conducting his homicide trial at least as it relates to discussions and/or instructions to attorneys as to proper methods for examining witnesses in certain

26

situations. Hence, it is suggested that this issue raised by defense counsel be overruled.

VIII.  DID THE TRIAL COURT ERR BY DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL UPON COMPLETION OF THE COMMONWEALTH'S CASE IN CHIEF AND/OR UPON CONCLUSION OF ALL OF THE EVIDENCE?

In the first instance, it must be understood that defense counsel's assignment of error on this issue is not applicable to the conviction for robbery and conspiracy to commit robbery of the Basilone Bar and Restaurant. Clearly the video surveillance tape recording showed appellant and Mr. Stewart trying to get into the Basilone Bar to carry out their robbery plot, but the door was locked. Their unindicted co-conspirator, Tyler Kalenic, testified at trial of their conspiracy to rob the bar which was corroborated by the videotape recording of Mr. Kalenic going first into the bar during business hours to case the joint, followed by a visit inside the bar by co-defendant Stewart wearing a yellow Steelers hoodie sweatshirt, and then the ultimate attempt by Mr. Stewart and appellant to actually walk into the bar to conduct the robbery. Tyler Kalenic clearly testified as well of being shown the .22 caliber pistol by Mr. Stewart which he carried throughout the evening and that appellant and Mr. Stewart asked him to join them in "hitting a lick." Tr. Transcript, Vol. I, pgs. 366-71.

Mr. Kalenic also identified appellant and co-defendant from the video surveillance tape as well as still photographs. He walked the jurors through that evening but testified that he gave up on the robbery plot before they ultimately tried to enter the bar and went home which was located roughly seven houses north of the bar along an alley that was adjacent to the bar. He also noted that he

27

watched from his kitchen window back up the alley towards the bar and was able to see appellant and co-defendant go into the alleyway and then saw the decedent walk into the alley and be shot multiple times by co-defendant Stewart. Finally, Mr. Kalenic testified that the appellant and Mr. Stewart then ran down the alley to his house where all three were picked up in a car by Cierra Vincent and driven away from the area. Mr. Kalenic also described the clothing worn at various times that evening by himself, co-defendant Stewart and appellant. The testimony of Tyree Sanders corroborated the identification of co-defendant and appellant and placed them near the scene of the crime shortly before it occurred. Taken together in a light most favorable to the Commonwealth, the Commonwealth had produced sufficient evidence to submit to the jury the robbery and criminal conspiracy to commit robbery and felony murder charges based upon what occurred in the alley outside of the bar after they first attempted to enter the bar to commit robbery. Hence, it is suggested that the denial of the defense Motion for Judgment of Acquittal following the Commonwealth's case in chief was appropriate and should be sustained.

In addition, it is suggested that the denial of the Motion for Judgment of Acquittal upon completion of the entire case should likewise be sustained on appeal. The defense presented one witness and that was appellant. He testified that he was 17 years of age at the time and admitted that he had a prior theft conviction and that he had entered into an agreement/conspiracy with Joshua Stewart and Tyler Kalenic to rob Basilone's Bar on December 30, 2011. He also testified that it would be a robbery at gunpoint with the .22 caliber revolver possessed that evening by Joshua Stewart. Appellant also confirmed his identity

28

and the identity of Mr. Kalenic and Mr. Stewart on the video surveillance tape and on still photographs. He also admitted that he was the individual that ultimately attempted to open the front door of Basilone's Bar when they pulled their masks up to go inside to conduct the robbery but the door was locked.

He further admitted that he then went into the alleyway next to the bar with the co-defendant and stood near the back of the Basilone Bar building while the co-defendant was closer to the front of the building and that he saw the decedent come out of the bar and walk to the beginning of the alley at which time Mr. Stewart shot him multiple times. They both then ran down the alley to Mr. Kalenic's house and were picked up shortly thereafter by Cierra Vincent and driven from the area.

Appellant contended in his testimony that while he was in the alley, he did not have nor was there any plan to rob Mr. Basilone or anyone else and that he was attempting to convince his friend, Joshua Stewart, to abandon any further plot to steal that night at gunpoint. Thus, while he admitted his participation in the initial robbery attempt and conspiracy of the bar itself, he denied any involvement other than mere presence at the scene of the crime when the decedent was shot and killed by Mr. Stewart.

Obviously, his denial was rejected by the jury. Therefore, it was proper for the trial court to deny the defense Motion for Judgment of Acquittal upon completion of the trial because of the credibility question that had to be resolved by the jury.

29

IX.   WAS THE SENTENCE IMPOSED ON THE OFFENSE OF FELONY MURDER MANIFESTLY EXCESSIVE AND UNREASONABLE BY EXCEEDING THE MANDATORY MINIMUM TERM OF INCARCERATION BY FIVE YEARS, AND DID THE SENTENCE COURT FAIL TO CONSIDER APPELLANT'S AGE, THAT HE WAS NOT THE SHOOTER AND HIS REHABILITATIVE NEEDS?

Appellant is only challenging the sentence imposed for second degree murder.   A sentence hearing was held on December 4, 2013 and appellant's sentence for murder of the second degree in violation of 18 P.S. § 2502(b) when he was 17 years of age at the time of the offense was that he serve a term of incarceration in a state correctional facility of 35 years to life pursuant to 18 P.S. § 1102.1(c)(1).  He was also sentenced on the two robbery and criminal conspiracy to commit robbery convictions but those were concurrent sentences.

The murder in this case occurred on December 30-31, 2011.  Appellant was 17 years of age at the time and the person who actually shot the decedent was 18 at the time and upon his conviction by a jury was sentenced to a mandatory life sentence without parole.   Pennsylvania amended its statute for sentences imposed for murder by persons under age 18 prior to appellant's conviction in this case.   The new statutory sentencing scheme in this case then called for a mandatory minimum term of incarceration of 30 years with a maximum of life in prison, with the possibility of parole.   However, the Sentence Court imposed an additional five years of incarceration on top of the mandatory minimum of 30 years. It is this additional five year period that is being challenged by the appellant as being excessive and unreasonable because he was not the shooter, was 17 at the time and the Court did not allegedly address his rehabilitative needs.

30

Pennsylvania's sentencing code mandates that "the court shall follow the general principal that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa. C.S.A. § 9721(b) (Supp. 2013). The Court must also take into account the sentencing guidelines applicable in each case.

Appellant had a prior record score of 0 even though he had prior convictions. The offense gravity score for second degree murder was H-2 and the mitigated, standard and aggravated ranges all called for a sentence of 360 months (30 years) of incarceration. Naturally, the statutory limit provided in Section 1102.1 was a life sentence as a maximum.

Appellant was 19 years of age at the time of his sentence hearing and the Sentence Court took into consideration 11 letters submitted by family members of the decedent and decedent's friends. Those individuals and others attended numerous pre-trial hearings and two jury trials as well as the sentence hearing and it was obvious that this senseless murder had a substantial impact on family, friends and the community in general because Mr. Basilone was a long-time fixture as was his establishment in the Farrell community for decades. The Court also took into consideration about 15 letters submitted on behalf of the appellant which portrayed a different side of him than was previously seen by the Court.

Appellant had been incarcerated since January 3, 2012 in the Mercer County Jail and the Court received a report from the jail indicating that he had poor adjustment while there including ten misconducts. Six of those misconducts were

31

completed. *Id.* at 16-17. The district attorney also argued that Mr. Campbell is highly manipulative and that he was involved in an escalating series of robberies for insignificant amounts of money. In fact, he and Mr. Stewart obtained nothing from the Basilone robbery/homicide. In conclusion, the Commonwealth argued for consecutive sentences for the robberies to the murder charge. The Commonwealth also pointed out that co-defendant Stewart was out of placement as a juvenile on August 29, 2011 but that the robberies did not start until Mr. Campbell was released from placement two and one-half months later. *Id.* at 20.

Defense counsel conceded at the sentence hearing that appellant was in the juvenile system and is "not a success story." *Id.* at 21. Defense counsel also apologized to the Basilone family for his inability to get appellant on the right track when in the juvenile system. *Id.* at 22.

The Court also reviewed with appellant at the sentence hearing his juvenile record and asked appellant various questions about what was going on in his life at that time. Basically, appellant admitted being an adjudicated delinquent in September of 2008 for possession of drug paraphernalia and was placed on probation for six months. *Id.* at 26. He was removed from the community and placed in shelter care after three months of probation because he was not going to school and was starting to use marijuana and vodka. *Id.* at 27. He formed his relationship with co-defendant Stewart at the end of 2007. In February of 2009, appellant was placed at Abraxas until June of 2009 and was placed back into the community on probation but was returned into shelter care by October of 2009. He was placed again in November of 2009 at the Northwest Academy Boot Camp which is normally a six month intense program that appellant did not complete until

33

October of 2010. Appellant conceded that he had to do an extra six months in the program because he wrote a letter to Mr. Stewart threatening to hurt his probation officer. *Id.* at 28. Appellant also received a simple assault conviction in June of 2011 and was at the Keystone Adolescent Center for about three and one-half months until he was ultimately released on November 14, 2011, about 45 days before the homicide in this case. Appellant was still on juvenile probation at the time of this offense *Id.* at 29.

The Sentence Court also noted that the Court took into consideration all of the information in the pre-sentence investigation report and all of its observations of appellant in the 23 months that the case was pending in the Mercer County Court of Common Pleas at numerous pre-trial hearings and conferences. The Sentence Court noted that it observed an escalation in appellant's criminal behavior from the lower juvenile offenses to the armed robbery/homicide case. The Court also noted the criminal disposition of appellant in designing and planning this particular robbery and upgrading his criminal activities with the use of a firearm. *Id.* at 35. The Sentence Court also factored in the commission of a new crime while in the jail pending trial in this matter and the numerous misconducts while incarcerated. In addition, the Court took into consideration that appellant and co-defendant involved a 15 year old in this armed robbery being Tyler Kalenic. The Sentence Court also noted that the only remorse shown by appellant was at the sentence hearing and his genuineness was questionable. *Id.*

Hence, the inclusion of five additional years on the minimum sentence on the second degree murder conviction for appellant was not excessive nor unreasonable, and it was tailored to protect society from an individual's escalating

34

criminal conduct which continued throughout his incarceration. Hence, the Sentence Court respectfully suggests that the challenge to the sentence be denied.

BY THE COURT:

Date: April 29, 2014

_____ J.
Christopher J. St. John, Judge

rmb

35